EDITH HOLLAN JONES, Circuit Judge:
In this case, we AFFIRM the bankruptcy court’s avoidance of a preferential transfer subject to 11 U.S.C. § 547(b).
On or about January 16, 1981, Conard Corporation as purchaser and Virgil Co-nard as guarantor executed an asset purchase agreement with Pizza Hut of McKinney, Inc., Pizza Hut of Greenville, Inc., Pizza Hut of Plano, Inc. as sellers and Jim and Patty Burton as guarantors (the selling parties are hereafter called “the Bur-tons”). Pursuant to the agreement, the purchaser acquired six Pizza Hut restaurants as going concerns, including leases, equipment, furniture and fixtures, inventory and certain other property rights. Payment was to be made to the Burtons, following a down payment, on a promissory note calling for 120 monthly installments of $6,742.20 commencing March 16, 1981. The Burtons retained no vendor’s lien or security interest in the assets sold to purchaser.
Effective February 29, 1984, Pizza Hut of Memphis, Inc. and Texas Pizza Hut Partnership (collectively called “PHMI”) purchased from Virgil Conard, Conard Corporation and Statewide Foods, Inc. as sellers all of sellers’ right, title, and interest in and to 25 Pizza Hut restaurants and all of their assets. Consideration for this purchase included, inter alia, the assumption by Texas Pizza Hut Partnership of Conard Corporation’s obligation to make the then-remaining 84 monthly installment payments to the entities owned by the Bur-tons. The contract evidencing this transaction was called the Assumption of Debt Agreement between Texas Pizza Hut Partnership and Conard Corporation. Shortly thereafter, Howell W. McCoy and/or his wife, Nancy S. McCoy, assumed the obligation of Texas Pizza Hut Partnership to pay the Burton debt.
Conard Corporation and Virgil Conard sought relief under Chapter 7 of the Bankruptcy Code on or about May 10, 1984, following the filing of an involuntary petition, and the appellee trustee was appointed.
The McCoys or their entities (PHMI) made eight payments to the Burtons on thé debt owed to them. In October, 1984 the trustee demanded that further payment on the Burton debt be forwarded to the debtors’ estates, and when counsel for the Bur-tons objected, PHMI ceased making payments on the Burton debt and began to place such payments in a special interest-bearing escrow account.
*612 The bankruptcy court concluded that payments already made and to be made in the future by PHMI and its owners on the Burton debt constituted indirect preferential transfers pursuant to 11 U.S.C. § 547(b). The bankruptcy court further “absolved and discharged” PHMI and its owners of any and all liability to any person or entity in connection with the transaction, except their obligation to pay the trustee under the Assumption of Debt Agreement. Other collateral relief awarded in the judgment was not appealed. The district court affirmed the bankruptcy court’s judgment.
The Burtons first contend that the payments made and to be made, by PHMI under the Assumption of Debt Agreement are not “property of the debtors’ estate” and therefore not subject to recovery under the statutory provision which permits the trustee to recover preferential payments made for or on account of antecedent debt within 90 days prior to the debtor’s filing for relief under the Bankruptcy Code. See 11 U.S.C. § 547(b). The Burtons contend that their contractual right to receive payments directly from the McCoys rather than the debtors insulates the assumption transaction from the preference provision. This facet of the Burtons’ case is controlled adversely to them by Palmer v. Radio Corporation of America, 453 F.2d 1133 (5th Cir.1971). In Palmer, relying on a prior but substantially identical statute affording recovery of preferences, this court held that an assumption by a purchaser of assets from the debtor of the debtor’s preexisting note obligation to a third party was a voidable preference. As the bankruptcy court here found, the transfer of assets by the debtors in exchange for a simultaneous assumption of the Burton debt by PHMI indirectly benefited the Bur-tons. The Burtons received from PHMI and/or Hal and Nancy McCoy, payment of a debt owed the Burtons by the Debtors. This is precisely analogous to the holding of the Fifth Circuit in Palmer.
The Burtons would distinguish Palmer on the basis that the McCoys individually assumed the obligation to pay their note after the actual sale closed, whereas in Palmer, RCA, the recipient of the preference, did not have an independent contractual right to receive payment from the third-party. This argument misperceives the nature of the preferential transfer in this case. As a result of executing the Assumption of Debt Agreement, the debtors transferred to the Burtons the debtors’ right to receive from PHMI so much of the sales price for the six Pizza Hut restaurants as was needed to reimburse the Bur-tons on their note. Because that transfer occurred within 90 days prior to bankruptcy, it is voidable. It is not material that the McCoys individually assumed the obligation on the Burton debt after the closing of the sale. Not only the McCoys individually but several of their entities made payments on the Burton debt at various times. This indicates that the McCoys and their related business entities treated the Assumption of Debt Agreement as a joint obligation which, indeed, was part of one transaction of sale from the debtors to the McCoy interests.
Because the Assumption of Debt Agreement entered into by PHMI constituted a voidable preference, we cannot impose a constructive trust upon payments due thereunder to prevent “unjust enrichment” of the debtors’ estate. The very purpose of the preference law, as noted in Palmer, is to restore equity among creditors of the debtor’s estate by limiting the debtor’s ability to prefer the interests of some creditors over others as he slides into bankruptcy. While it always seems “unfair” that creditors such as the Burtons must lose the benefit of a transaction they accomplished with the debtor just prior to bankruptcy, on a more general level, it is fairer to distribute the maximum amount of assets among all creditors in accordance with the distribution principles established in the Bankruptcy Code.
*613 The Burtons’ second and third contentions are that the bankruptcy court lacked jurisdiction to rule on this preference case and to “absolve and discharge” the McCoys of liability on the Assumption of Debt Agreement to the Burtons. We disagree. The bankruptcy court’s jurisdiction over proceedings to avoid or recover preferences is established in 28 U.S.C. § 157(b)(2)(F) as a “core proceeding”. Such a proceeding is automatically referred to the bankruptcy court by virtue of the local rules adopted in the Southern District of Texas shortly after the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98-353, became effective. This jurisdictional issue, unlike many involving the bankruptcy courts, has a clearcut statutory answer.
The judgment in this case avoided the Assumption of Debt Agreement to the extent that it permitted payment of monies otherwise owed to the debtors to be paid to the Burtons. In absolving the McCoys and PHMI of liability to the Burtons, the court simply implemented its avoidance of the preferential transfer. The trustee was authorized to recover the property, i.e. the right to receive the payments to be made under the Assumption of Debt Agreement, or its value when the transfer was avoided. 11 U.S.C. § 550(a). The rights under the Assumption of Debt Agreement were awarded to the trustee, and the McCoys and PHMI became obligated to make payments under the Assumption of Debt Agreement to the debtors’ estates. Although the McCoys were indeed originally obligated to the Burtons on the Assumption of Debt Agreement, once the benefits of the Assumption of Debt Agreement had been avoided as to the Burtons, the McCoys and their entities remained obligated to pay — only once — under the Assumption of Debt Agreement to the debtors’ estates.
For the foregoing reasons, the judgments of the district court and bankruptcy court are AFFIRMED.